The defendant, Christopher Irwin, was indicted on numerous charges for shoving, hitting, and strangling his ex-girl friend (the victim). Following a jury trial in the Superior Court, he was convicted on three indictments for strangulation, one indictment for assault by means of a dangerous weapon, and two indictments for assault and battery on a family or household member.[2] On appeal, he contends that the judge abused her discretion in denying his motion for issuance of summons seeking the victim's counselling records. We affirm.
Background. 1. Facts. The victim and the defendant had an "on and off" relationship for ten years. The defendant was also the father of the victim's daughter. On the date at issue, the victim and the defendant got together at the defendant's home. That evening, they argued about the defendant's relationship with another woman, consumed alcohol,[3] and engaged in further arguments regarding the other woman that the defendant had started seeing. At some point the argument escalated, which resulted in the defendant throwing silverware at the victim, throwing a heavy bowl at her, grabbing her, pushing her, choking her multiple times, striking her head against the kitchen wall and then against his bedroom wall, and slamming her head onto the floor. The defendant also pushed the victim against an air conditioning unit on the second floor, causing the unit to fall out of the window. He then continued to push her toward the open window, at which point the victim was scared of dying. The victim eventually contacted her father, and asked him to "come get [her]." According to the victim's father, she was crying, upset, and scared, and she advised that the defendant had struck her and hit her head against a wall.
The father contacted the police, who responded to the scene. Officer Jeffrey Giles of the Townsend police department observed the victim at the front door of the residence. He described her as "frantic," and observed red marks on both sides of her neck, a scratch underneath her chin down to her throat area, and "red blotchiness underneath her eyes to her cheekbones." The victim initially declined medical care, but later received treatment for a sprained ankle, bruises, and cuts.[4]
Police officers entered the home and located the defendant asleep in his bedroom. The room was "very disorderly," with clothes scattered about and "alcohol nips strewn about the room." The defendant was lying clothed and face down on the bed. There was an "overwhelming odor of an alcoholic beverage" in the room. The defendant's speech was slurred, his eyes were "glassy" and "bloodshot," he was incoherent, and he appeared intoxicated. In the kitchen, the officers saw a glass cookware container that "had a broken face," and also noticed that the glass face of the oven was broken.
Through cross-examination and closing argument, the defense claimed that the victim fabricated the incident, possibly because the defendant had been cheating on her or because their relationship did not "work out." The defense further argued that the victim's mental health condition and prescribed medications -- combined with her consumption of alcohol and marijuana -- impaired her ability to perceive events.
2. Pretrial motion for rule 17 summons. Before trial, the defendant filed a motion for issuance of summons seeking the victim's prescription records from her local pharmacy. A judge (who was not the trial judge) allowed the motion in part. The defendant subsequently filed another motion for issuance of summons pursuant to Mass. R. Crim. P. 17, 378 Mass. 885 (1979), seeking records for the victim from a counselling center. The motion was accompanied by an affidavit from defense counsel, and by a supplemental affidavit filed six days after the motion was filed. After a nonevidentiary hearing the trial judge denied the motion.
Discussion. "[W]here a defendant seeks pretrial inspection of statutorily privileged records of any third party, [he must satisfy the] protocol set forth in [ Commonwealth v.] Dwyer, [448 Mass. 122, 139, 145-146 (2006).] [T]o trigger use of the protocol, a defendant must first comply with the threshold requirements of Mass. R. Crim. P. 17 (a) (2), as elucidated in [ Commonwealth v.] Lampron, [441 Mass. 265, 269 (2004) ]." Commonwealth v. Sealy, 467 Mass. 617, 627 (2014). In this regard, the party moving to summons records must:
"establish good cause, satisfied by a showing '(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition." ' "
Lampron, 441 Mass. at 269, quoting United States v. Nixon, 418 U.S. 683, 699-700 (1974). Rule 17 (a) (2) is not a discovery tool that may be "invoked merely for the exploration of potential evidence." Lampron, supra. Accordingly, "[p]otential relevance and conclusory statements regarding relevance are insufficient" to meet rule 17 requirements. Id. We review the judge's ruling on rule 17 (a) (2) motions for abuse of discretion. See Commonwealth v. Jones, 478 Mass. 65, 69 (2017).
Here, the judge denied the motion for summons because the defendant "ha[d] not met his burden pursuant to ... Lampron, 441 Mass. [at] 269... to show that there are counselling records in this case that are relevant and admissible in this trial." As such, the judge explicitly found that the first prong of Lampron was not met. See Lampron, supra. The judge's ruling did not constitute an abuse of discretion.
The defendant presented no evidence that the victim received any counselling, much less demonstrated "that the materials sought were relevant or would likely be admissible at trial." Jones, 478 Mass. at 70. At the motion hearing, in response to the judge's concern that defense counsel's supplemental affidavit did not demonstrate that the victim had undergone counselling and did not provide a basis, apart from conjecture, that any such records were relevant and likely admissible at trial, defense counsel conceded that "unfortunately we do not have the details to provide to the [c]ourt." Pressed further by the judge on the absence of evidence, defense counsel expressed her "hope" that relevant counselling records would exist when a doctor or therapist prescribed "antipsychotic medication." Defense counsel's proffer rested on conjecture and conclusory claims, and in denying the motion for summons, the judge implicitly found that the defendant failed to meet the fourth prong of Lampron.[5] See Lampron, 441 Mass. at 269. This is precisely the type of speculative fishing expedition that our case law has held to be insufficient to meet the moving party's burden. See Jones, supra ("were we to accept the defendant's argument that the records would be relevant both because they might contain information regarding the alleged assault and because they might not, certain statutory and common-law privileges would be rendered meaningless"); Commonwealth v. Olivier, 89 Mass. App. Ct. 836, 846 (2016) ("even assuming that the primary care provider whose records the defendant sought would for some reason have information in her records about statements the victim made to her counsellor, there is no evidence the victim ever even spoke to her counsellor about the alleged [assault]"). In short, there was no evidence that the requested records existed, or, even if they did exist, that they would have borne on the victim's ability to perceive or recollect the attack.
We further note that the judge's ruling did not preclude defense counsel from cross-examining the victim as to whether she had taken certain medications or as to any purported effects therefrom. Indeed the judge stated at the motion hearing that information regarding "her ability to perceive, recollect, recall, [and] testify" would be "fair game" at trial. In addition, the defendant was free to elicit testimony from an expert regarding potential side effects from any medications taken by the victim, as well as the impact from the interaction of such medications with marijuana or alcohol on her ability to recollect or perceive. In any event, where, as here, the defendant's proffer was too speculative, we cannot say that the judge abused her discretion in denying the motion for issuance of summons.[6] See Jones, 478 Mass. at 68, quoting Commonwealth v. Alcantara, 471 Mass. 550, 564 (2015) (relevance "is not established by rank speculation").
Judgments affirmed.

The jury found the defendant not guilty on one indictment for assault and battery by means of a dangerous weapon.

The victim also testified that she had smoked marijuana earlier that day.

Photographs of the victim's injuries were admitted at trial as exhibits. The victim's medical records were likewise admitted at trial as exhibits.

During the motion hearing, the judge emphasized the "extraordinary protections that all people deserve when they go to see a mental health professional" and that defense counsel hinged her argument on the "hope there's something there."

We note the strength of the evidence corroborating the victim's account, including, but not limited to, the broken glass, her injuries, and the photographs documenting her injuries.